FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In re:                                              :
                                                    :        Chapter 13
    James N. Wapshare                             :
                                                    :        Case No. 13-35075 (cgm)
                                                    :
                         Debtor.              :
                                                    :
------------------------------------------------------------X

## MEMORANDUM DECISION ON MOTION TO AVOID
## SECOND MORTGAGE AND RECLASSIFY CLAIM

**A P P E A R A N C E S :**

Edward J. Quilice, Esq.
Simon Haysom LLC
One Railroad Ave.
P.O. Box 487
Goshen, NY 10924
Attorney for Debtor

Kevin F. Preston, Esq.
MacVean, Lewis, Sherwin & McDermott, P.C.
34 Grove St.
P.O. Box 310
Middletown, NY 10940
Attorney for Orange County Trust Company

**CECELIA G. MORRIS**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

### Introduction

      James N. Wapshare ("Debtor") seeks to avoid and reclassify a second mortgage that encumbers his principal residence. The holder of the second mortgage, Orange County Trust Company (the "Bank"), objects to the Debtor's requested relief. The Bank argues that the mortgage lien cannot be avoided until the Debtor has proposed a confirmable plan in this "chapter 20" case. For the reasons discussed below, the Bank's objection is overruled.

**Jurisdiction**

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a) and the Amended Standing Order of Reference signed by Chief Judge Loretta A. Preska dated January 31, 2012. This is a "core proceeding" under 28 U.S.C. § 157(A) and (b)(2)(B) (allowance of claims against the estate).

**Background**

Prior to filing this case, on July 20, 2012, the Debtor filed a chapter 7 petition. *In re Wapshare*, Case No. 12-36849 (cgm) (Bankr. S.D.N.Y. July 20, 2012), ECF No. 1. Shortly thereafter, on October 17, 2012, the Debtor received a discharge and the case was closed on the same day. Order of Discharge, Case No. 12-36849 (cgm), ECF No. 13. On January 14, 2012, approximately three months after a discharge was granted and the chapter 7 case was closed, the Debtor filed a chapter 13 petition initiating this case. *In re Wapshare*, Ch.13 Case No. 12-36849 (cgm) (Bankr. S.D.N.Y. July 20, 2012).

The Debtor in this case seeks to modify the Bank's rights as holder of a wholly underwater second mortgage pursuant to § 1322(b)(2). Dr's Mem. of Law at 2, ECF No. 15.

The Bank in this case did not contest the Debtor's use of § 1322(b)(2), and did not contest the Debtor's appraisal, which indicated that the second mortgage is wholly unsecured. The Bank focused on the Debtor's purported inability to confirm the proposed chapter 13 plan. The Bank argues that the plan will not generate sufficient funds to treat the arrears of the first mortgage holder, that the Debtor has already failed to make post-petition payments to the first mortgage holder, and that the plan will not pay priority unsecured creditors in full. Obj. ¶ 3, ECF No. 18.

**Discussion**

I.   **Lien avoidance in a "chapter 20" case**

In *Pond v. Farm Specialist Realty (In re Pond)*, 252 F.3d 122 (2d Cir. 2001), the Second Circuit held that a chapter 13 debtor could avoid a wholly unsecured second mortgage that encumbered a principal residence.  252 F.3d at 127.  To arrive at this conclusion, the Second Circuit analyzed the interaction between §§ 506(a) and 1322(b)(2).  *Id*. at 124-25.  Noting that § 1322(b)(2) allows a debtor to modify the rights of holders of secured claims, *other than* a claim secured only by a security interest in real property that is the debtor's principal residence, the court focused on whether the mortgage holder held a secured claim.[1] *Id*; 11 U.S.C. 1322(b)(2).  Looking to the Supreme Court decision in *Nobelman v. American Savings Bank*, 508 U.S. 324 (1993) for guidance, and agreeing with a majority of Courts of Appeals who had spoken on the issue, the Second Circuit adopted the view that "the antimodification exception is triggered only where there is sufficient value in the underlying collateral to cover a portion of a creditor's claim." *Id*. at 125-26; *In re Wong*, 488 B.R. 537, 540 (Bankr. E.D.N.Y. 2013) (determining that *Pond* stands for the proposition that where there is no value in the collateral to cover the claim, the antimodification provision does not apply); *see also McDonald v. Master Fin., Inc. (In re McDonald)*, 205 F.3d 606, 612 (3d Cir. 2000); *Bartee v. Tara Colony Homeowners Ass'n (In re Bartee)*, 212 F.3d 277, 295 (5th Cir. 2000); *Lane v. W. Interstate Bancorp (In re Lane)*, 280 F.3d 663, 668 (6th Cir. 2002); *Zimmer v. PSB Lending Corp. (In re Zimmer)*, 313 F.3d 1220, 1227 (9th Cir. 2002); *Tanner v. FirstPlus Fin., Inc. (In re Tanner)*, 217 F.3d 1357, 1360 (11th Cir. 2000); *Domestic Bank v. Mann (In re Mann)*, 249 B.R. 831, 840 (B.A.P. 1st Cir. 2000); *Fisette v.*

---

[1]   The "other than" qualifier is often referred to as the "antimodification" exception.

*Keller (In re Fisette)*, 455 B.R. 177, 182 (B.A.P. 8th Cir. 2011), *appeal dismissed*, 695 F.3d 803 (8th Cir. 2012); *Griffey v. U.S. Bank (In re Griffey)*, 335 B.R. 166, 170 (B.AP. 10th Cir. 2005).

To determine whether value existed to secure the claim, the Second Circuit then looked to § 506(a) and *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 239, 109 (1989), which explained that "[s]ubsection (a) of § 506 provides that a claim is secured only to the extent of the value of the property on which the lien is fixed . . . ." *Pond*, 252 F.3d at 126; *see also Assocs. Commercial Corp. v. Rash,* 520 U.S. 953, 961 (1997) ("The first sentence [of § 506(a)], in its entirety, tells us that . . . the secured portion of [a] claim [is] limited to the value of the collateral."); *In re Miller*, 462 B.R. 421, 428 (Bankr. E.D.N.Y. 2011) (noting that the Second Circuit permits courts to value a residential mortgage lien under § 506(a) to determine whether it is secured or unsecured, and if unsecured, the plan may modify the rights of the holder of the unsecured junior mortgage with § 1322(b)(2)).

There is an ongoing debate over whether a chapter $20^2$ debtor can modify an underwater junior mortgage lien that is secured by the debtor's principal residence. *See Miller*, 462 B.R. at 428-29 (listing cases); *In re Waterman*, 469 B.R. 334, 338-39 (D. Colo. 2012) (listing cases); *Frazier v. Real Time Resolutions, Inc.*, 469 B.R. 889, 895, n. 6-8 (E.D. Cal. 2012) (noting three separate approaches courts take and listing cases falling into each approach). The split between courts results from the interplay of a number of statutory provisions. *Frazier*, 469 B.R. at 896 ("The determination of whether Appellees' Chapter 13 plan may remove Appellant's junior lien necessitates analysis of the interplay between §§ 506(a)(1), 1322(b)(2) and 1328(f)(1) of the

---

2     Filing a chapter 13 petition shortly after receiving a chapter 7 discharge (colloquially referred to as a "chapter 20") is not a new phenomenon. In *Johnson v. Home State Bank*, 501 U.S. 78, 84-85 (1991). The Supreme Court held that a mortgage holder's *in rem* right against property survives a chapter 7 discharge, and thus the mortgage holder's interest could be scheduled as a claim for purposes of a debtor's subsequent chapter 13 case. The Court reviewed various prohibitions on serial filing in place at the time, and concluded that the absence of a similar prohibition against chapter 20 filings "convinces us that Congress did not intend categorically to foreclose the benefit of Chapter 13 reorganization to a debtor who previously filed for Chapter 7 relief." *Id*. at 87.

Bankruptcy Code"); *Miller*, 462 B.R. at 429 ("[T]he issue of strip offs in chapter 20 cases requires an examination of §§ 506(a), 506(d), 1322(b)(2), 1325 and 1328 . . . .").

The Court finds that the plain language of the Bankruptcy Code, even as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 37 (2005) ("BAPCPA"), does not categorically prohibit the filing of a chapter 13 petition even though the debtor is ineligible for discharge. *In re Rogers*, 489 B.R. 327, 333 (D. Conn. 2013); *accord Johnson v. Home State Bank*, 501 U.S. 78, 84-85 (1991). The Court finds that the plain language of the Bankruptcy Code does not prohibit the use of § 1322(b)(2) in a chapter 20 case, and the Court is bound to follow the Second Circuit's decision in *Pond v. Farm Specialist Realty (In re Pond)*, 252 F.3d 122 (2d Cir. 2001). *E.g.*, *Rogers*, 489 B.R. at 333 ("[T]here is nothing in the plain language of the applicable Bankruptcy Code sections, even where amended by BAPCPA, that presumptively prohibits application of section 1322(b)(2) in a no-discharge Chapter 13 case."); *In re Scantling*, 465 B.R. 671, 678 (Bankr. M.D. Fla. 2012) ("[A] debtor can modify the rights of a wholly unsecured junior mortgage in a chapter 13 case[,] [a]nd the same ought to be true in a chapter 20 case absent some prohibition to the contrary."); *In re Gloster*, 459 B.R. 200, 205 (Bankr. D. N.J. 2011) (discussing how Congress is presumed to have known that six Circuit Courts of Appeals sanctioned strip-off of wholly unsecured mortgage obligations with §§ 506(a) and 1322(b)(2) in chapter 13, and nonetheless did not make any changes to these provisions in the BAPCPA amendments).

Section 1325(a)(5) does not change the result. That section states that the court shall confirm a plan if, in relevant part:

(5) with respect to each allowed secured claim provided for by the plan—

    (A) the holder of such claim has accepted the plan;
    (B)

>>(i) the plan provides that—
>
>>>(I) the holder of such claim retain the lien securing such claim until the earlier of—
>
>>>>(aa) the payment of the underlying debt determined under nonbankruptcy law; or
>>>>(bb) discharge under section 1328; and
>
>>>(II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law;

The Bank's junior mortgage lien is wholly underwater. It does not give rise to an "allowed secured claim" such that § 1325(a)(5) is implicated. *See* 11 U.S.C. § 506(a); *See also* Transcript of Confirmation Hearing and Motion to Avoid Lien at 4, *In re Maria Sands,* Case No. 12–23241 (rdd) (Bankr. S.D.N.Y. Sept. 12, 2012), ECF No. 22 ("under the Second Circuit law—because, obviously, we're all governed by the *Pond* case—1325(a)(5) doesn't kick in.... and the *Pond* rationale is consistent with not having it kick in."). The provision in the statute requiring payment of the underlying debt or discharge before a lien can be avoided is not implicated in this case.

The Court finds the reasoning in the recent Fourth Circuit case *Branigan v. Davis (In re Davis)*, ___ F.3d ___, 2013 WL 1926407, at *7 (4th Cir. May 10, 2013) to be persuasive. In *Davis*, the court found that wholly unsecured junior mortgages are "worthless" and are therefore unsecured claims under § 506(a). *Id.* BAPCPA did not amend §§ 506 or 1322(b)(2), leaving that premise intact in chapter 20. *Id.* Section 1325(a)(5) could not change this result; that section applies to "allowed secured claims." *Id.* Valuation under § 506(a) would be required, and that would lead to a wholly unsecured claim. *Id.* This result did not lead to an otherwise impermissible avoidance of a junior lien in chapter 7, as Congress could have

> intended to leave intact the normal Chapter 13 lien stripping regime where a debtor could otherwise satisfy the requirements for filing a Chapter 20 case. In that regard, the law already provides a mechanism for preventing abuse of the bankruptcy process without the creation of a per se rule against lien-stripping, as bankruptcy courts are bound to carefully scrutinize filings for good faith and dismiss cases where the debtor attempts to use a Chapter 20 procedure solely to strip off a lien. Likewise, creditors are also protected by section 349(b)(1)(C), which provides that a lien springs back if the case is dismissed.

*Id.*

There is case law supporting this view in this Circuit as well. In *In re Wong*, 488 B.R. 537, 550 (Bankr. E.D.N.Y. 2013), the court held that § 1325(a)(5) does not apply to a wholly unsecured claim pursuant to § 506(a). Under *In re Pond*, "a mortgage debt claim for which there is no collateral value is not a secured claim entitled to protection of the anti-modification provisions of § 1322(b)(2)." *Id.* (quoting *In re Miller*, 462 B.R. 421, 430 (Bankr. E.D.N.Y. 2011)). The *Wong* court extended this rationale to § 1325(a)(5), meaning that a wholly unsecured junior mortgage is not entitled to "allowed secured claim" protection under that section. 488 B.R. at 550. The claim was wholly unsecured under § 506(a) and therefore could be modified under § 1322(b)(2). *Id.* at 551. The claim was wholly unsecured, meaning § 1325(a)(5) did not prevent the confirmation of a plan that provided for the avoidance of the lien. *Id.*

Contrary to the holdings in *Davis*, *Wang*, and this Court, *In re Orkwis*, 457 B.R. 243, 250 (Bankr. E.D.N.Y. 2011) held that a junior mortgage lien is not removed until entry of discharge. The court found that §§ 1325(a)(5)(B)(i)(I) and (II) made clear that there are only three options for removal of the junior mortgage: payment of the underlying debt, discharge under § 1328, or surrender of the collateral. *Id.* at 250-51. The court also looked to § 348(f)(1)(C) for the proposition "that claims secured by liens on property, even if the value of the property is insufficient to collateralize the debt, do not disappear upon the filing of the petition, or upon

entry of an order of confirmation, or upon completion of plan payments." *Id.* at 251. Section 1328(f) prohibits a chapter 13 discharge where a debtor received a chapter 7 discharge during the four years prior to the chapter 13 case; the debtor would have to either surrender the collateral or pay the lien in full through in chapter 20. This Court believes, however, that §§ 1325(a)(5)(B)(i)(I) and (II) only apply to allowed secured claims, and a wholly unsecured junior mortgage cannot hold an allowed secured claim under § 506(a) and *Pond*, 252 F.3d at 126.

### III.     The Debtor's Motion

With this background in place, the Court turns to the Debtor's motion. The Bank did not object to the Debtor's assertion that the second mortgage is wholly underwater. Obj. ¶ 7, ECF No. 18. The Bank also did not object to the Debtor's use of § 1322(b)(2). Instead, the Bank states that when "the Debtor seeks to strip a lien as part of a 'chapter 20' plan, such plan 'must otherwise comply with all other requirements for plan confirmation set forth in the [Bankruptcy] Code.'" Obj. ¶ 8, ECF No. 18. Today, the first question is whether the constraints set forth in *Pond* are satisfied, and this Court finds that they are. As the second mortgage is unsecured, the Bank's rights are not protected by the antimodification exception, and the Bank's rights as holder of the unsecured second mortgage can be modified pursuant to § 1322(b)(2).

The present motion is distinguishable from the cases cited in creditor's objection: *In re Blenheim*, 2011 WL 6779709 (Bankr W.D. Wash. 2011); *In re Renz*, 476 B.R. 382 (Bankr. E.D.N.Y. 2012); *In re Ochs*, 283 B.R. 135 (Bankr. E.D.N.Y. 2002). The court in *Blenheim* held that lien stripping was permitted in a chapter 20 case where a bank held a wholly unsecured second mortgage on the debtor's principal residence so long as the debtor's plan was proposed in good faith. 2011 WL 6779709, at *5. *Renz* is distinguishable for the same reason. 476 B.R. at 388-89 (noting that lien stripping is permitted in a chapter 20, while denying confirmation of the

debtor's plan on good faith grounds). *Ochs* has no bearing on this case as it did not deal with lien stripping whatsoever. 283 B.R. at 136 (stating that the good faith challenge to the debtor's chapter 13 plan was based on one parties allegedly fraudulent prior conduct).

This does not mean that the Debtor is free of all responsibility. The Debtor must still prevent dismissal of the case. In *In re Miller*, 462 B.R. 421, 433 (Bankr. E.D.N.Y. 2011), the court held that "only upon the completion of the plan payments may a debtor strip off an inferior wholly unsecured mortgage lien after satisfying the requirements of §§ 1325(a)(4) and 1325(b)(1)." The court noted the distinction between "closing" a case and "dismissing" a case, noting that dismissal vacates certain orders, and § 349(b) revests property of the estate back to the entity in which the property was vested immediately before the petition. *Id.* at 432 (citing *In re Chaudhry,* 411 B.R. 282, 283 (Bankr. E.D. Va. 2009). Closure, on the other hand, occurs after the estate is fully administered under § 350. *Miller*, 462 B.R. at 432. Avoided transfers and avoided liens remain avoided. *Id.* (citing *Chaudhry*, 411 B.R. at 283). A case can be closed without discharge under Bankruptcy Rule 4006. *Miller*, 462 B.R. at 432-33 (citing Fed. R. Bankr. P. 4006).

Moreover, the Fourth Circuit in *Davis* held that "creditors are also protected by § 349(b)(1)(C), which provides that a lien springs back if the case is dismissed." No. 12-1184, at 2. That provision would not apply if the estate is fully administered and the case is merely closed.

Failure to remit timely plan payments to the chapter 13 trustee is cause for dismissal under § 1307(c)(4). Thus, a debtor wishing to resolve the case through closure of the case, rather than dismissal, must complete plan payments.

The Court's form *Pond* order ("Order") provides the creditor with the protection contemplated in *Miller* and *Davis*. The Order states that the second mortgage is void "subject to the lien's reinstatement upon dismissal or conversion of the Debtor(s)'s chapter 13 plan." Form Order Voiding Mortgage Lien ¶ 3 (May 13, 2013), *available at* http://www.nysb.uscourts.gov/poughkeepsie-orders. A confirmed plan is a condition to preserving the avoidance of a second mortgage. Once a plan is confirmed, the "subject to . . . reinstatement upon dismissal or conversion" language acts as a backstop, and the avoided second mortgage will "spring back" into place should the case be dismissed or converted. This means that the debtor seeking to avoid an unsecured second mortgage must confirm a plan and ultimately complete all plan payments in accordance with the confirmed plan in order to avoid dismissal under § 1307. If the debtor fails to comply with the requirements of chapter 13, the lien will be reinstated.

This should alleviate the concerns of the Bank, which may still object to confirmation. The *Miller* court noted this distinction by acknowledging that confirmation is not always achievable; "the debtor must still meet each of the other applicable provisions of § 1325 and chapter 13 to obtain confirmation of his or her plan." *Id.* at 433.

In so holding, this Court joins those courts that hold that an unsecured junior mortgage lien is permanently avoided in chapter 20 cases once a chapter 13 plan is confirmed and all plan payments have been made. *See e.g., Miller*, 462 B.R. at 433 ("[O]nly upon the completion of the plan payments may a debtor strip off an inferior wholly unsecured mortgage lien . . . ."); *Frazier*, 469 B.R. at 900 ("The lien strip will become permanent not upon a discharge, as would happen in a typical Chapter 13 case, but upon completion of all payments as required by the plan."); *In re Okosisi*, 451 B.R. 90, 103 (Bankr. D. Nev. 2011) ("The permanence of the lien avoidance is

conditioned upon the successful completion of all plan payments."); *In re Tran*, 431 B.R. 230, 236-37 (Bankr. N.D. Cal. 2010) ("[T]he court can condition any permanent modification or stripping on the debtor's performance and completion of the debtor's chapter 13 plan."); *In re Fisette*, 455 B.R. 177, 185 (B.A.P. 8th Cir. 2011) ("We hold that the strip off of a wholly unsecured lien on a debtor's principal residence is effective upon completion of the debtor's obligations under his plan . . . ."), *appeal dismissed*, 695 F.3d 803 (8th Cir. 2012); *In re Jennings*, 454 B.R. 252, 255 (Bankr. N.D. Ga. 2011) ("Plan completion voids the lien.").

**IV.    Motion to Reclassify Claim**

As for the Debtor's request to reclassify the second mortgage as an unsecured claim, this too is in accordance with *Pond*. *Pond* instructs us to apply § 506(a) when faced with a motion to avoid a second mortgage lien, and § 506(a) dictates that a claim is secured "to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim." *Pond*, 252 F.3d at 126-27; *see also* 11 U.S.C. § 506(a).  As the second mortgage in this case does not attach to any value in the property, the Bank's "lien is wholly unsecured under Section 506(a)." *Pond*, 252 F.3d at 127.  The motion to reclassify is granted.

## Conclusion

For the foregoing reasons, the Debtor's motion is granted.  The Debtor is instructed to submit an order consistent with this opinion.

Dated: Poughkeepsie, New York
      May 15, 2013              /s/ Cecelia G. Morris
                                   CECELIA G. MORRIS
                                   CHIEF UNITED STATES BANKRUPTCY JUDGE